BAKER, Judge
(dissenting):
I respectfully dissent. I do not believe the military judge abused her discretion in applying Military Rule of Evidence (M.R.E.) 412 to the evidence at issue in this ease. The evidence had low probative value, raised significant M.R.E. 412 balancing concerns, and was not vital to the defense;[1] therefore it fell within the military judge’s discretion to exclude the evidence.
Appellant failed to produce an evidentiary foundation for introducing the proffered evidence that is otherwise excluded under M.R.E. 412. In particular, defense counsel failed to show a direct nexus between the evidence the defense sought to introduce, and the incident at issue in this case. As a result, exclusion of this evidence did not deprive Appellant of the opportunity to present a defense.
The circumstances of CL’s affair with JH and the incident with Appellant were very different: rather than an ongoing affair, this was a one-night sexual encounter with varying accounts as to the victim’s consciousness. The victim, CL, has no history of false allegations of rape — on the contrary, it was she who told her husband of her consensual affair with JH a few days after it ended. Moreover, the defense theory of admissibility rested on just the sort of presumption M.R.E. 412 is intended to address, namely, that “a previous affair made it more likely that CL would have lied.” United States v. Ellerbrock, 70 M.J. 314, 319 (C.A.A.F. 2011). As a result, the military judge correctly required a direct factual nexus between the prior affair and the incident with Appellant before permitting testimony about the affair with JH. Appellant did not provide such a nexus. Neither the victim nor her husband testified that either of them expected, threatened, or feared “what would happen if there *322 was further infidelity in” the marriage. Defense counsel had the opportunity to question each witness on these points, and neither made a statement that supported the defense theory that the marriage would not survive another incident, or that the victim feared this.
The majority bridges this evidentiary gap with a conclusion about human nature, stating that “common sense is the guiding principle for Appellant’s theory for admitting evidence of CL’s prior affair ... determinations of relevancy must be based on ‘personal experience, general knowledge, and understanding of human conduct and motivation.’ ” Id. at 319 (citations omitted). The majority postulates, “[T]he existence of a prior affair may have established a greater motive for CL to lie about whether her sexual encounter with appellant was consensual.” Id. at 320. It may have done so, but there is no evidence it did do so. The link appears to be based on a “common sense” understanding that a married person who has had an affair is more likely to later fabricate a rape allegation with a stranger than someone who has not. That is the type of presumption about the sexual propensity and moral character of a sexual assault victim that M.R.E. 412 is intended to exclude. Moreover, the logic of the argument implies that any prior fact that would place additional stress on a marriage is constitutionally required to be admitted where a married woman is the victim of a sexual assault and the defense is based on consent.
M.R.E. 412 requires significantly more. It requires a concrete evidentiary proffer rather than just a theory. This proffer must demonstrate why the evidence offered is material, the manner in which it is material and probative, and why its probative value outweighs the privacy interests of the victim.
DISCUSSION
A. M.R.E. 4.12
M.R.E. 412 is a rape shield law. It is intended to protect the privacy of victims of sexual assault while at the same time protecting the constitutional right of an accused to a fair trial through his right to put on a defense. It accomplishes the first objective by limiting the opportunity of an accused to inquire into the past sexual conduct of the victim and from using innuendo and propensity to demonstrate consent. It accomplishes the second objective by expressly recognizing that some evidence, which otherwise would fall within the parameters of M.R.E. 412, is essential to a fair trial and is thus constitutionally required.
The rule’s constitutional foundation rests upon the Supreme Court’s determination in Michigan v. Lucas that “The right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.” 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quotation marks omitted).
In the military context, these legitimate interests extend beyond those recognized in the civilian context. They include a societal interest in the reporting and prosecution of sexual offenses and maintenance of a justice system that is fair to both the accused and to the victims. They also include maintenance of good order and discipline in the military as well as the morale and welfare of those who serve in the armed forces. M.R.E. 412 is a rule of exclusion in light of the societal interests at stake. Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-35 (2008 ed.) (MCM) [hereinafter Drafters’ Analysis].
B. The M.R.E. 4.12(c)(3) Exception
The plain text of M.R.E. 412 establishes a three-part test to determine whether evidence is constitutionally required. First, the evidence must be relevant.[2] This, of course, is a baseline and not a finish line.[3]
*323 Second, the evidence must be material, as determined by “the importance of the issue for which the evidence was offered in relation to the other issues in the case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to this issue.” United States v. Banker, 60 M.J. 216, 223 (C.A.A.F.2004) (quotation marks and citation omitted).
Finally, in general the probative weight of the evidence must outweigh the privacy interests of the victim. It is true that M.R.E. 412(c)(8) evidence may be sufficiently relevant and material — its probative value sufficiently high — that it may be essential to an accused’s constitutional right to put on a defense regardless of how it balances against the victim’s privacy. If so, its probative weight will necessarily outweigh any privacy interests of the victim. Such evidence in the vernacular of case law is termed “favorable,” or “vital” to the accused, and is constitutionally required because the accused has a right to a fair trial and an opportunity to put on a defense.
Determining if a piece of evidence meets this standard can be made in deliberate and sequential fashion as the military judge works through the rule. Alternatively, based on the facts of a case it might appear so obvious to the military judge that on the face of the evidence it is vital to the defense, obviating the need to engage in any balancing. However, not all evidence that is relevant and material is essential to the right to put on a defense. Otherwise, the drafters of the MCM would not have structured the rule in a manner that had the balancing test textually follow the military judge’s threshold determinations on relevance and materiality. Indeed, most M.R.E. 412 evidence proffered in connection with a viable constitutional theory of admission will not fall crisply into black and white categories of constitutional inclusion or privacy exclusion. Neither do most M.R.E. 412 cases involve singular proffers of evidence. The M.R.E. 412 balancing test promulgated by the President therefore serves as a mechanism for military judges to accommodate multiple and weighty constitutional issues and values without dealing in all-or-nothing absolutes of inclusion or exclusion. As a result, where the balancing is close, a military judge will not necessarily abuse her or his discretion by including or excluding evidence. A military judge does not abuse her or his discretion in excluding evidence if the defense proffer is relevant and material but of such low probative value that it is outweighed by the privacy interest of the victim. Likewise, if in applying the balancing test the military judge determines that the probative value of the evidence outweighs the risk of unfair prejudice, then it is also within the military judge’s discretion to admit the evidence — after, of course, applying any other applicable rules of evidence, such as M.R.E. 403. However, it is also important to note that evidence may not emerge as “vital” until after an initial M.R.E. 412 ruling. Thus, it is possible for a military judge to correctly apply M.R.E. 412 in excluding evidence, but err by not later reconsidering that ruling.
In sum, M.R.E. 412 does not preclude an accused from putting on evidence related to a spouse’s prior extramarital affair. It does provide for a military judge, in her or his discretion, to preclude an accused from doing so absent a direct material and evidentiary connection between the theory of admissibility and the facts of the specific ease — in other words, a showing that the evidence is relevant, material, and potentially vital.
C. Applying the Test in This Case
In this case, the evidence indicates the following as reflected in the military judge’s findings of fact and conclusions:
CL and Corporal BL married in August 2004. Approximately two to three months *324 later, CL commenced a consensual sexual relationship with JH. This occurred two and one half years prior to the incident at issue. JH was a Mend of CL’s female roommate who temporarily moved in to their apartment. The relationship was ongoing and continuous and ended “of its own accord in December 2004.” CL “voluntarily informed her husband of the affair immediately after it ended. She also confided in her parents, friends, and a neighbor.” She felt guilty. As the military judge stated in her findings:
Upon learning of the affair, he [BL] did not threaten to leave CL, but he kicked down a door and was incarcerated for three days in a local jail. BL and CL worked out their marital problems and remain married to the present day. Both CL and BL believe their marriage is stronger because of the affair.
With respect to the incident for which Appellant was charged, the military judge found that CL did not know Appellant before the night in question. In addition, the expert toxicologist testified that CL’s consumption of drug and alcohol would leave CL inebriated somewhere between sedated and comatose; and different witnesses perceived different sounds upon their return to the house.[4]
This Court reviews a military judge’s decision to exclude evidence subject to M.R.E. 412 for an abuse of discretion. Banker, 60 M.J. at 223.
(1) Probative Value
At trial, Appellant sought to introduce evidence of CL’s affair with JH for the purpose of showing CL’s motive to fabricate because she feared a similar and more severe reaction to the discovery of another extramarital sexual encounter and more generally to protect her marriage.
In response, the military judge made the following conclusions on the record:
[CL]’s extramarital affair is remote in both time and manner to the rape and forcible sodomy charges before the court. Not only did the affair occur two and a half years ago, but it began after [CL] became intimate with a man she saw on a daily basis for a month .... [CL] and the accused did not previously know one another.
There is no pattern of rape allegations; [CL]’s allegation of rape against the accused is the first rape allegation she has lodged. There is no pattern of extramarital affairs by [CL]; the affair occurred 2 1/2 years ago is the only incident of infidelity in the [L]’s marriage. There is no evidence that the affair destroyed or even weakened [the] marriage; in fact, they remain married, have had a child since the revelation of the affair, and the evidence shows their marriage is, now stronger.
There is no evidence that [BL] told [CL] that if she had another affair, he would leave her, end the marriage, or react in any other way.
The majority does not find the military judge’s findings of fact clearly erroneous. However, the majority concludes that “the military judge erred in applying [M.R.E.] 412 to prevent Appellant from introducing evidence of the alleged victim’s first marital affair.” Ellerbrock, 70 M.J. at 315 (emphasis added). In my view, the military judge did not abuse her discretion for four reasons.
(a) First, there is no evidence to suggest, as the majority does, that the encounter between Appellant and CL was a second marital affair. The logic of Appellant’s argument changes significantly if the incident with Appellant is viewed as a “second affair.” There is no doubt that a prior sexual affair could be probative in assessing someone’s credibility *325 and motive to fabricate. As a matter of logic, for example, a “second” affair would be more damaging to a marriage than would a single affair, if other factors remain the same and the evidence indicates as much. However, there is no evidence whatsoever in the record that CL was engaged in an affair with Appellant.
(b)Second, if one does not treat the incident with Appellant as a second affair, then it was either a rape or a one-night stand. In that case the theory of admission necessarily rests on the view that a married woman who has had an affair is more likely to falsely allege rape to protect her marriage two years later than a woman who has not had a prior affair.
This theory of admission is inherently problematic because it is not based on the facts in evidence, but rather on a presumption about human nature. There is no evidence in the record that the prior affair put the marriage on tenterhooks at the time of the rape. The evidence seems to suggest otherwise. The military judge stated on the record, “There is no evidence that the affair destroyed or even weakened [the] marriage; in fact ... the evidence shows their marriage is now stronger.” This finding may be coun-terintuitive, but it is supported by facts in the record. Neither is there evidence in the record that either CL or BL made statements or raised concerns about what might happen to their marriage in the event of a subsequent sexual encounter outside the marriage or other stressful event. The notion that their marriage would end if an additional stressor occurred was either not factually accurate or was not elicited by counsel, even though counsel was given the opportunity to establish a factual basis for this claim in the Article 39(a), UCMJ, 10 U.S.C. 839(a)[5] session.
Furthermore, the extramarital affair was not consistent in time, place, manner or (perhaps most importantly) manner of discovery, with the charges that were before the court-martial. The affair was over two years prior, JH was a person whom CL knew and was living with for a period of months, and CL did not end the prior relationship with an allegation of rape. She ended it voluntarily, and then told her husband about the relationship. The incident in this ease involved two strangers, one of whom was inebriated and either engaged in consensual sex or was raped. Therefore, we are not dealing here with a pattern of conduct, or a pattern of conduct indicative of deceit.
(c) Third, to the extent the defense theory rested on more than a presumption about human nature, which M.R.E. 412 precludes, it depended on Appellant’s angry reaction to the affair with JH. The defense argued that BL’s previous angry reaction when he broke a door was the specific eiddence they sought to bring in (as distinct from the general existence of the affair or CL’s propensity to engage in extramarital sex). However, the defense did not demonstrate that this evidence was both material and highly probative, and thus vital, to Appellant’s opportunity to put on a defense.[6]
It is intuitive that a spouse might express anger toward someone who engages in consensual sex with his spouse. Indeed, one might expect a husband to show equal if not greater anger in the event that his spouse was raped as opposed to engaging in a consensual one-night stand. Moreover, BL was deployed in Iraq at the time; thus the prospect of an immediate and violent reaction to the incident was geographically removed. And CL did not testify that she feared BL’s response to learning of the incident.
(d) Finally, even if Appellant’s theory of admission was valid, the evidence offered by Appellant in support of the theory was of little probative value. It is intuitive that a spouse might have a motive to hide a consensual sexual encounter outside the marriage *326 regardless of any past affair. As the majority notes, it is common sense that a married man or woman might lie about a consensual sexual event in order to protect a marriage. However, it is not clear why the existence of a prior affair alone makes it any more likely the offending spouse would do so. One could even argue based on the facts in this case that it made it less likely because CL reported the affair herself.
As a result, evidence standing alone that CL had once had an extramarital affair that prompted BL to kick a door down was not essential, i.e., vital, to Appellant’s opportunity to put on a defense. Therefore, the military judge appropriately sought to balance the probative weight of the proffer against the privacy interests of the victim.
(2) CL’s Privacy Interest
The record contains two statements directly addressing the victim’s privacy interests. First, in response to the military judge’s question, “How would you feel about [the fact that you had this extramarital affair] coming out in open court today?” CL responded: “Well, honestly, I don’t see it having any relevance to him raping me. I don’t see how that — you know — matches up. If it was to come out, then it comes out. There’s nothing I can do about that.” In response to the military judge’s question “about these perfect strangers in this courtroom finding out that you had an affair,” CL responded: “I don’t think it is any of their business.” She also told defense counsel, “I’m not afraid for it to come out, but it would still be embarrassing because it’s defacing my character in front of people I don’t know.”
The majority does not address CL’s privacy interest. Presumably this is because CL had told others about the affair with JH, appeared to have reconciled to the fact of its occurrence, and seemed aware of the possibility that it would come out at trial. The victim’s privacy interest in this case is not as compelling as in some cases. However, the fact that one has told family and friends something does not mean that the information would not result in “defacing [one’s] character” “in front of people [one] do[esn’t] know.” CL said as much.
Thus, on this record, the military judge did not abuse her discretion in excluding the evidence on probative or privacy grounds. She certainly did not do so in the context of the purpose of M.R.E. 412 or in the manner in which she applied the M.R.E. 403 balancing test to the evidence.
In my view, the military judge correctly considered the broader implications of her ruling on the privacy interests intended to be protected by M.R.E. 412, as reflected in the military judge’s conclusion that “[t]o allow evidence of [CL]’s previous extramarital affair [without a specific predicate] would mean that anytime a married woman alleges rape, her complete sexual history during the marriage becomes relevant to show bias.” Under the majority’s reasoning, in the ease of a sexual assault trial, it would seem constitutionally required to permit inquiry on any stressor upon the marriage, past or present, sexual or not, because such stressors might always serve as a basis to protect the marriage or made the other spouse angry. In my view, something more is needed, or the legitimate privacy interests that the rule seeks to balance and protect will be swept aside.
Further, the military judge’s M.R.E. 403 concerns about confusing the issues appear well founded, and in any event, are not erroneous. This Court has discouraged the introduction of evidence which results in a “distracting mini-trial on a collateral issue.” United States v. Berry 61 M.J. 91, 97 (C.A.A.F.2005) (quoting United States v. Bailey, 55 M.J. 38, 41 (C.A.A.F.2001)) (quotation marks omitted). That appears to be exactly what has occurred in this case at all levels of judicial process. M.R.E. 412 derives in part from recognition that this interest in avoiding the mini-trial is heightened when the evidence has a tendency to embarrass or degrade the witness/vietim.[7]
*327 In conclusion, because the military judge’s findings of fact are not clearly erroneous and her application of the law on the record is sound and consistent with the legitimate purposes of M.R.E. 412 and the constitutional interests it seeks to protect, she did not abuse her discretion in excluding the evidence at issue in this ease.

. I use the word vital to mean that which is consistent with the constitutional guarantee of "a fair opportunity to present a defense.” Crane v. Kentucky, 476 U.S. 683, 687, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

. Relevance is "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. While this is a low bar, I remain unconvinced that the defense demonstrated that the prior affair made any fact in the current charges more or less likely because they failed to submit any reason other than sexual propensity (an impermissible use) or speculations regarding CL's motivation as a married woman (an unsubstantiated theory of admission).

. See United States v. Sullivan, in which this Court upheld the need for a basic show of rele- *323 vanee in order to admit evidence even in a case that did not implicate the additional restrictions of M.R.E. 412: "An accused does not have a right to cross-examine a witness on any subject solely because he describes it as one of credibility, truthfulness, or bias. There must be a direct nexus to the case that is rooted in the record.” 70 M.J. 110, 115 (C.A.A.F.2011).

. Private Page testified that he recognized the voice moaning and it was "Just the sound of [Appellant].” SPC Jackson stated that he heard "sexual noises” that "sounded like a female type voice” but when they opened the door, he saw the victim, eyes closed, "[h]er head just laying there limp.” When the defense counsel stated that "the complainant was moaning prior to the individuals coming into the room seeing her in there with PFC Ellerbrock,” the militaiy judge responded, "That's a proffer on your part. There's been no evidence so far before this court to that whatsoever.”

. Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2006).

. The military judge explicitly gave defense counsel opportunity to explain the relevance of the evidence, that is, to demonstrate its tendency to prove or disprove a fact at issue in the case. M.R.E. 401. In the M.R.E. 412 session, the military judge repeatedly asked for the defense counsel to establish relevance. It is the military judge’s responsibility to make determinations of admissibility in an ongoing trial.

. M.R.E. 412 "is intended to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to prosecutions of such offenses.” Drafters’ Analysis app. 22 at A22-35.